REBECCA ARAGON, SBN 134496
raragon@littler.com
LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, California 90071
Telephone: 213.443.4300
Fax No.: 213.443.4299

JAMES A. BECERRA, SBN 308459
jbecerra@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067
Telephone: 310.553.0308
Fax No.: 310.553.5583

Attorneys for Defendant
CARVANA, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| EMMALEE KALIHER, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARVANA, LLC and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. 5:22-cv-222<br><br>ASSIGNED FOR ALL PURPOSES TO THE HONORABLE<br><br>**DEFENDANT CARVANA, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>[28 U.S.C. §§ 1332, 1441, & 1446]<br><br>Complaint Filed: October 13, 2021 (San Bernardino County Superior Court, Case No. CIVSB2129085) |

DEFENDANT'S NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendant Carvana, LLC ("Defendant") removes the above-captioned action from the Superior Court of the State of California, County of San Bernardino, to the United States District Court, Central District of California, pursuant to 28 U.S.C. sections 1332(d) (Class Action Fairness Act of 2005), 1441(b), and 1446 on the following grounds:

## I. STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred members; (b) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with United States Code, title 28, section 1446. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## II. VENUE

2. This action was filed in the Superior Court for the State of California, County of San Bernardino. Accordingly, venue properly lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. sections 84(c)(3), 1391, 1441, and 1446. Further, Plaintiff alleges the operative acts took place in Ontario, California. Declaration of Rebecca Aragon ("Aragon Decl.") ¶ 3, Ex. 1 (Plaintiff's Complaint), ¶ 2.

## III. PLEADINGS, PROCESS, AND ORDERS

3. On October 13, 2021, Plaintiff Emmalee Kaliher ("Plaintiff") filed a Class Action Complaint for Damages in the San Bernardino Superior Court, titled *Emmalee Kaliher, on behalf of herself and others similarly situated, v. Carvana, LLC, and Does 1 to 100,* Case No. CIV SB 2129085. Aragon Decl., ¶ 3, Ex. 1. The Complaint asserts

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

DEFENDANT'S NOTICE OF REMOVAL    2

claims on behalf of a putative class of hourly, non-exempt individuals that worked for Defendant in the State of California, specifically (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to authorize or permit meal periods, (4) failure to authorize or permit rest periods, (5) failure to timely pay earned wages during employment, (6) failure to provide accurate, itemized wage statements, (7) failure to timely pay wages due at separation of employment, and (8) unfair business practices.

4.   On October 13, 2021, Plaintiff filed a Civil Case Cover Sheet. Aragon Decl., ¶ 4, Ex. 2. On October 13, 2021, Plaintiff filed a Certificate of Assignment. Aragon Decl., ¶ 5, Ex. 3. On November 19, 2021, the Clerk of the Superior Court issued a Summons. Aragon Decl., ¶ 6, Ex. 4. On December 6, 2021, the Superior Court entered an Initial Case Management Conference Order. Aragon Decl., ¶ 7, Ex. 5. On December 8, 2021, the Superior Court entered Guidelines for the Complex Litigation Program. Aragon Decl., ¶ 8, Ex. 6.

5.   On February 2, 2022, Defendant filed with the Superior Court an Answer to Plaintiff's Complaint. Aragon Decl., ¶ 10, Ex. 7.

6.   Pursuant to 28 U.S.C. § 1446(d), the attached Exhibits 1 - 7 constitute all process, pleadings and orders served on Defendant or filed or received by Defendant in this action. To Defendant's knowledge, no further processes, pleadings, or orders related to this case have been filed in San Bernardino Superior Court or served by any party. Additionally, to Defendant's knowledge, no proceedings or future hearings related hereto have been heard in San Bernardino Superior Court. Attached as Exhibit 8 to Rebecca Aragon's Declaration is a true and correct copy of the San Bernardino Superior Court's docket to date reflecting all processes, pleadings, and orders served on Defendant or filed with the Court in this action.

## IV.   TIMELINESS OF REMOVAL

7.   An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the Defendant within 30 days of service on defendant of the initial pleading. *See* 28 U.S.C. § 1446(b);

DEFENDANT'S NOTICE OF REMOVAL    3

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

*Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). When service is accomplished via a Notice of Acknowledgment and Receipt, service "is deemed complete on the date a written acknowledgment of receipt of summons is executed . . . ." Cal. Civ. Proc. § 415.30.

8. Here, the removal of this action is timely because Defendant filed this Notice of Removal within thirty (30) days from January 4, 2022, when Defendant executed the Notice of Acknowledgment and Receipt of the Complaint, and within one year from the commencement of this action. 28 U.S.C. § 1446(b), (c) (1); *see* Aragon Decl. ¶ 9.

## V.  NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

9. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, a true and correct copy of this Notice will be provided to Plaintiff's counsel of record, Joseph Lavi, Lavi & Ebrahimian, LLP, 8889 W. Olympic Blvd., Suite 200, Beverly Hills, CA 90211. Aragon Decl. ¶ 12. In addition, a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of San Bernardino. *Id.*

## VI.  REMOVAL JURISDICTION UNDER CAFA

10. CAFA grants United States district courts original jurisdiction over: (a) civil class action lawsuits filed under federal or state law; (b) where the alleged class is comprised of at least 100 individuals; (c) in which any member of a class of plaintiffs is a citizen of a state different from any defendant; and (d) where the matter's amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d). CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. As set forth below, this case meets each CAFA requirement for removal, and is timely and properly removed by the filing of this Notice of Removal.

### A.  Plaintiff Filed A Class Action Under State Law

11. Plaintiff filed the Complaint as a class action based on alleged violations

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

DEFENDANT'S NOTICE OF REMOVAL                4

of California state law. *See* Complaint.

### B.   The Proposed Class Contains At Least 100 Members

12. CAFA provides this Court with jurisdiction over a class action when "the number of members of all proposed plaintiff classes in the aggregate [is not] less than 100." 28 U.S.C. § 1332(d)(5)(B). CAFA defines "class members" as those "persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D).

13. Here, Defendant's internal records demonstrate that there are over 100 putative class members in this case.

14. Plaintiff filed this action on behalf of herself and "[a]ll current and former hourly non-exempt employees employed by Defendants in California at any time from four (4) years prior to the filing of the initial Complaint in this matter . . . ." Complaint, ¶ 41(A). In addition, Plaintiff alleges that the "class is estimated to be greater than fifty (50) individuals . . . ." Complaint, ¶ 14(a).[1]

15. According to the class definition, and based on a review of Defendant's records from someone with personal knowledge of Defendant's record keeping practices, Defendant employed no fewer than 874 hourly, nonexempt employees in its California locations during the period of October 13, 2017 to December 21, 2021. *See* Declaration of Rob Schmitt in Support of Defendant's Notice of Removal ("Schmitt Decl."), ¶ 4.

### C.   Defendant Is Not A Governmental Entity

16. Under 28 U.S.C. § 1332(d)(5)(A), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

17. Here, Defendant is a limited liability company, not a state, state official,

---

[1] Defendant disputes that Plaintiff is able to represent these employees on a class basis, particularly those who worked in different job classifications and facilities than Plaintiff. This Notice of Removal assumes Plaintiff's class definition as set forth in the Complaint for purposes of removal, but Defendant does not concede that such a class definition is appropriate in this case.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

DEFENDANT'S NOTICE OF REMOVAL     5

or other government entity exempt from CAFA. Declaration of Mia Singer in Support of Defendant's Notice of Removal ("Singer Decl."), ¶ 3.

### D. There Is Diversity Between At Least One Class Member And One Defendant

18. CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A), 1453(b). In a class action, only the citizenship of the named parties is considered for diversity purposes, and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 340 (1969). Additionally, for removal purposes, diversity must exist both at the time the action was commenced in state court and at the time of removal. *See Strotek Corp. v. Air Trans. Ass'n of Am.*, 300 F.3d 1129, 1130-1131 (9th Cir. 2002). Minimal diversity of citizenship exists here because Plaintiff and Defendant are citizens of different states.

19. For diversity purposes, a person is a "citizen" of the state in which she is domiciled. *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983); *see also Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) (confirming that person's domicile is the place she resides with the intention to remain). Furthermore, allegations of residency in a state court complaint create a rebuttable presumption of domicile supporting diversity of citizenship. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *see also State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, No. 1:05-CV-01187-OWW-GSA, 2008 WL 744709, at *7 (E.D. Cal. Mar. 18, 2008) (finding a place of residence provides "'prima facie' case of domicile").

#### a. Plaintiff is a citizen of California.

20. In the instant action, Plaintiff has at all times been a resident of California.

21. Plaintiff alleges that Defendant "employed Plaintiff and putative class

DEFENDANT'S NOTICE OF REMOVAL                6

members in locations throughout California, including but not limited to San Bernardino County . . . ." Complaint, ¶ 2. Plaintiff further alleges she was employed by Defendant from May 2021 until August 2021. Complaint, ¶ 4. In addition, Plaintiff's employment records with Carvana reflect that, at all relevant times, she provided a home address in California, and through her employment with Carvana, worked in an was physically present at the job site in California. Schmitt Decl., ¶ 5.

22. Defendant has thus established by a preponderance of the evidence that Plaintiff resides and is domiciled in California, and is, thus, a citizen of California. *Lew*, 797 F.2d at 751; *Smith*, 2008 WL 744709, at *7; *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"); *Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, *22 (E.D. Cal. 2008) (place of residence provides "prima facie" case of domicile).

### b. Defendant is not a citizen of California.

23. Defendant is not a citizen of California. Section 1332(d)(10) of CAFA provides that, "[f]or purposes of this subsection and section 1453, an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *Ramirez v. Carefusion Resources, LLC*, 2019 WL 2897902, at *2-3 (S.D. Cal. July 5, 2019) (holding that unincorporated associations under CAFA include LLCs) ("Moreover, to apply the traditional diversity rule holding that LLCs are citizens of every state in which their members are domiciled would likely undermine Congress's intent to facilitate adjudication of certain class actions in federal court by excluding from federal adjudication the vast majority of class actions brought against LLCs."); *see Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 699-700 (4th Cir. 2010); *Heckemeyer v. NRT Missouri, LLC*, No. 4:12CV01532 AGF, 2013 WL 2250429, at *5-*6 (E.D. Mo. May 22, 2013) ("Congress chose to treat LLCs like corporations for

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

DEFENDANT'S NOTICE OF REMOVAL     7

purposes of determining citizenship under CAFA.").

24. Defendant is, and was at the time this action was commenced, organized under the laws of the State of Arizona. Singer Decl., ¶ 3. Defendant maintains its principal place of business in Arizona, which is where the Defendant's corporate headquarters are located and where Defendant's corporate books are maintained. *Id.* Defendant's executive and administrative offices are also located in Arizona. *Id.*

25. The presence of Doe defendants in this case has no bearing on diversity with respect to removal. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

26. Accordingly, the named Plaintiff is a citizen of the State of California, while Defendant is a citizen of the State Arizona. Therefore, complete diversity exists for purposes of CAFA jurisdiction because the named parties are citizens of different states. 28 U.S.C. §§ 1332(d)(2)(A), §1453.

### E. The Amount In Controversy Exceeds $5,000,000[2]

27. This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which, among the other factors mentioned above, the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d).

28. The Supreme Court, in *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014), recognized that "as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554. Only if the plaintiff contests or the court questions the allegations of the notice of removal is supporting evidence required. *Id.* Otherwise, "the amount-in-controversy allegation of a defendant seeking federal-court adjudication should be accepted" just as a plaintiff's amount-in-controversy allegation

---

[2] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiff or the putative class are entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

DEFENDANT'S NOTICE OF REMOVAL                                    8

is accepted when a plaintiff invokes federal court jurisdiction. *Id.* at 549-50.

29. "The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds" the jurisdictional minimum. 28 U.S.C. § 1332(d)(6). "In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).

30. For purposes of determining whether a defendant has satisfied the amount in controversy requirement, the Court must presume that the Plaintiff will prevail on the claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F. 3d 1092, 1096 (11th Cir. 1994) (stating that the amount in controversy analysis presumes that "'plaintiff prevails on liability'") (other internal citation omitted)). The ultimate inquiry is what amount is put "in controversy" by plaintiff's complaint, not what defendant might actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005); *accord Ibarra v. Manheim Inv., Inc.* 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (explaining that even when the court is persuaded the amount in controversy exceeds $5,000,000, defendants are still free to challenge the actual amount of damages at trial because they are only estimating the amount in controversy); *Schere v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy by the plaintiff's complaint); *Patel v. Nike Retail Servs.,* 58 F. Supp. 3d 1032, 1040 (N.D. Cal. 2014) ("But a defendant is not required to admit, and is certainly not required to prove, the truth of plaintiff's assertions before invoking diversity jurisdiction.").

31. Defendant denies the validity and merit of Plaintiff's claims, the legal theories they are based upon, and Plaintiff's request for monetary and other relief. For purposes of removal, however, and without conceding that Plaintiff or the putative

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

DEFENDANT'S NOTICE OF REMOVAL   9

class is entitled to any damages or penalties whatsoever, it is apparent that the aggregated claims of the putative class establishes, by a preponderance of evidence, that the amount in controversy exceeds the jurisdictional minimum of $5,000,000.

32. Plaintiff asserts eight causes of action on behalf of a class of all current and former non-exempt employees of Defendants in the State of California. *See* Complaint. In the Prayer for Relief, Plaintiff seeks damages including compensation for unpaid wages and overtime, premium wages, penalties, interest, liquidated damages, injunctive relief, and attorneys' fees and costs. Complaint, Prayer for Relief, p. 28-31.

      **a.**    **Plaintiff's Unpaid Wages And Liquidated Damages Claim Places At Least $1,129,115.16 Into The Amount In Controversy.**

33. In the First Cause of Action, Plaintiff alleges the putative class was "routinely" not paid for all hours worked, including off the clock work. Complaint, ¶ 13-17.

34. According to Defendant's records, Defendant employed no fewer than a total of 874 hourly, nonexempt employees in its California locations from October 13, 2017 to December 21, 2021. Schmitt Decl., ¶ 4. These individuals were collectively employed for approximately 28,242 workweeks between that time period. *See Cortez*, 23 Cal. 4th at 179; Schmitt Decl., ¶ 4. The average hourly wage for current employees working in Defendant's California locations as of December 21, 2021 is approximately $19.99 per hour. Schmitt Decl. ¶ 4. Applying a conservative assumption that Plaintiff and the putative class seek 1 hours per week of wages including for off-the-clock work at the average hourly wage of $19.99, then Plaintiff therefore seeks a sum of at least **$564,557.58** on behalf of the putative class. This amount is calculated as follows: 28,242 workweeks x $19.99 per hour x 1 hour per week.

35. In addition, Plaintiff alleges that, pursuant to Labor Code section 1194.2, the putative class is entitled to liquidated damages in an amount equal to the wages unlawfully withheld. Complaint, ¶ 50. Therefore, this places an additional **$564,557.58** in the amount of controversy, which is an amount equal to the allegedly unpaid wages.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

DEFENDANT'S NOTICE OF REMOVAL     10

36. Therefore, Plaintiff's claim to unpaid wages, and consequential liquidated damages, places **$1,129,115.16** into the amount in controversy.

### b. Plaintiff's Unpaid Overtime Claim Places At Least $423,347.58 Into The Amount In Controversy.

37. Plaintiff alleges in the Second Cause of Action that the putative class was "[r]outinely" required to work overtime, including off the clock work. Complaint, ¶ 20.

38. California Labor Code § 510 requires that employers pay nonexempt employees one-and-one-half times their regular rate for all hours worked over eight in a day or 40 in a week. Additionally, nonexempt employees must be paid one-and-one-half times their regular rate for the first eight hours worked on the seventh day worked in a single workweek. Employers must also pay double time for all hours worked over 12 in a day, and for all hours worked in excess of eight on the seventh consecutive day of work in a single workweek. Cal. Lab. Code § 510(a). The statutory period for recovery under California Labor Code section 510 is calculated under a four-year statute of limitations. *See* Cal. Code Civ. Proc. § 338(a) (setting a three-year period); Cal. Bus. & Prof. Code § 17208 (the three-year statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

39. To determine the monetary amount in controversy for Plaintiff's overtime claim, the total number of hours worked unpaid by Plaintiff and the putative class that would have been considered overtime hours is multiplied by one and one-half times their respective regular rates of pay rate in effect during the time the overtime was allegedly worked.

40. The average hourly rate for current non-exempt employees as of December 21, 2021 who worked in Defendant's California locations was approximately $19.99 per hour, and therefore an overtime rate of approximately $29.98 per hour. Schmitt Decl. ¶ 4. The putative class of approximately 874 individuals were employed an estimated 28,242 weeks between October 13, 2017 and December 21, 2021. Schmitt Decl. ¶ 4. Conservatively assuming that Plaintiff alleges each class member worked .5

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

DEFENDANT'S NOTICE OF REMOVAL   11

uncompensated overtime hours per week, the total Plaintiff seeks for uncompensated overtime is **$423,347.58.** This amount is calculated as follows: 28,242 workweeks x $29.98 per hour  x .5 overtime hour per week.

      **c.**      **Plaintiff's Meal And Rest Break Claims Place At Least $1,129,115.16 Into The Amount In Controversy.**

41.    Plaintiff alleges in the Second Cause of Action and Third Cause of Action on behalf of the putative class that Defendant "employed policies, practices, and/or procedures" that, including "[r]outinely," failed to provide uninterrupted meal or rest periods to Plaintiff and the other class members.  Complaint, ¶¶ 24-33; s*ee also Duberry v. J. Crew Group, Inc.*, Case No. 2:14-cv-08810-SVW-MRW, 2015 U.S. Dist. LEXIS 99171, * 7 (C.D. Cal. Jul. 28, 2015) (100% violation rate may be based on allegations of a uniform noncompliant practice); *Batta v. YRC, Inc.*, 2021 WL 677903, at *1 (C.D. Cal. Feb. 19, 2021) (allegation that defendant failed to provide "all" breaks warranted 100% violation rate); *Flores v. Marriott Resorts Hospitality Corporation*, 2019 WL 1069528, at *3 (C.D. Cal. Jan. 7, 2019) (""As an initial matter, the Court agrees that a 100 percent violation rate for the relevant time period may be assumed here because Plaintiffs' allegations do not contain any qualifying language such as 'often' or 'sometimes' to suggest violations were less than uniform, and Plaintiffs do not suggest any reasonable alternative violation rate on which the court can rely.").

42.    If an employer fails to provide an employee a meal or a rest period in accordance with California law, the employer must pay one additional hour of pay at the employee's regular rate of pay for each workday that the meal or rest period are not provided. Cal. Labor Code, § 226.7.

43.    Based on Defendant's review of records, Defendant employed no fewer than a total of 874 hourly, nonexempt employees working in its California locations from October 13, 2017 to December 21, 2021.  Schmitt Decl., ¶ 4. The average hourly rate earned by current hourly non-exempt employees who work in the Defendant's California locations is approximately $19.99 per hour. *Id.* These individuals were

collectively employed a total of approximately 28,242 workweeks during that time period. *Id.*

44. Therefore, the potential liability for Plaintiff's meal break claim amounts to approximately **$564,557.58**. This amount is calculated as follows: 28,242 workweeks x 1 meal period violation per week x $19.99 average meal period penalty per violation.

45. In addition, the potential liability for Plaintiff's rest break claim for the statutory period of October 13, 2017 to December, 2021 amounts to approximately **$564,557.58**. This amount is calculated as follows: 28,242 workweeks x 1 rest period violation per week x $19.99 average rest period penalty per violation.

46. Accordingly, the meal and rest breaks combined add **$1,129,115.16** into the amount in controversy.

    **d. Plaintiff's Claim For Waiting Time Penalties Places At Least $1,694,752.20 Into The Amount In Controversy.**

47. Plaintiff's Seventh Cause of Action is for statutory waiting-time penalties under California Labor Code sections 201-203. Complaint, ¶¶ 39-40. Plaintiff contends that, based on the other Labor Code claims alleged, "Defendants maintained a policy or practice of not paying hourly employees all earned wages timely upon separation of employment." Complaint, ¶ 99.

48. The statute of limitations for Plaintiff's Cal. Lab. Code § 203 waiting time penalty claim is three years. *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1382, 1935 (2010) ("no one disputes that when an employee sues to recover both unpaid final wages and the resulting section 203 penalties, the suit is governed by the same three-year limitations period that would apply had the employee sued to recover only the unpaid wages"). Section 203 provides up to thirty (30) days of pay as a penalty for not paying all wages due at the time of termination.

49. Defendant estimates that 471 employees have separated from employment since October 13, 2018. Schmitt Decl., ¶ 4. The average hourly rate for current employees as of December 21, 2021 is $19.99. *Id.*

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

DEFENDANT'S NOTICE OF REMOVAL   13

50. If putative class members would receive waiting time penalties for thirty days, at 6 hours per day, an estimate of the amount in controversy related solely to waiting time penalties is **$1,694,752.20**. This amount is calculated as follows: 6 hours/day x 30 days x $19.99 average hourly rate x 471 employees = $1,694,752.20.

          **e.**      **Plaintiff's Wage Statement Penalty Claim Places At Least $944,500.00 Into The Amount In Controversy.**

51. Plaintiff's Sixth Cause of Action is for wage statement penalties under California Labor Code section 226. Complaint, ¶¶ 85-94. Plaintiff alleges that Defendant provided the putative class with wage statements that "stated inaccurate informing including, but not limited to, the number of hours worked, the gross wages earned, and the neg wages earned," which was "knowing and intentional." Complaint, ¶¶ 88, 90.

52. Section 226 provides for a $50 penalty for the each pay period in which an initial violation occurs per employee, and $100 for each subsequent violation per employee, up to $4,000. California Labor Code section 226 has a one-year statute of limitations. Cal. Code Civ. Proc., § 340(a).

53. Defendant's hourly, non-exempt employees who work in California are issued wage statements every other week. Schmitt Decl. ¶ 4. According to Defendant's records, between October 13, 2020 and December 21, 2020, Defendant potentially issued approximately 9,823 wage statements to approximately 756 employees. *Id.*

54. Potential liability for Plaintiff's claim for wage statement penalties amounts to at least **$944,500.00.** This amount is calculated as follows: ($50 X 756 initial wage statements) + ($100 X 9,067 subsequent wage statements).[3]

---

[3] No individual class member has reached the $4,000 maximum on penalties provided for under Labor Code section 226. Moreover, Defendant denies that Plaintiff is able to recover damages for any alleged "subsequent" violation.

DEFENDANT'S NOTICE OF REMOVAL      14

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

      **f.    The Ninth Circuit's Benchmark Of 25 Percent Of The Amount Recoverable For An Award Of Attorneys' Fees In Class Actions Requires $XXX To Be Added To The Amount In Controversy.**

55. Plaintiff seeks to recover attorneys' fees by way of the Complaint. *See* Prayer for Relief. It is well settled that, in determining whether a complaint meets the amount in controversy requirement, a court should consider the aggregate value of claims as well *as* attorney's fees. *See, e.g.*, *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238 (1943); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorneys' fees may be taken into account to determine jurisdictional amounts). In fact, the Ninth Circuit has an established benchmark of 25 percent of the amount recoverable for an award of attorneys' fees in class actions. *See Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (same). This 25 percent figure has been repeatedly relied upon by the courts to determine the amount in controversy for removal purposes. *Altamirano v. Shaw Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal. June 14, 2013) (including 25 percent attorneys' fees to increase the amount in controversy to above $5 million CAFA threshold); *Giannini v. Nw. Mut. Life Ins. Co.*, No. C 12-77 CW, 2012 WL 1535196, at *4 (N.D. Cal. Apr. 30, 2012) (same).

56. In California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be 25 percent to 30 percent of the settlement and, thus even a conservative estimate of attorneys' fees in this matter would be far in excess of $1 million.[4]

---

[4] *See Abasi v. HCA, the Healthcare Co. Inc.*, C.D. Cal. No. CV 03-7606 (May 9, 2005) (approving $4.75 million settlement for claims of unpaid overtime, meal and rest break periods; attorney's fee award totaling over $1.2 million (25 percent)); *Burns v. Merrill Lynch*, N.D. Cal. No. 3:04-cv-04135 (August 2005) (approving $37 million settlement for claims of failure to pay overtime; attorneys' fees of $9.25 million (25 percent)); *Coldiron v. Pizza Hut-Yum! Brands, Inc.*, C.D. Cal. No. 03-5865 (June 2006) (approving $12.5 million settlement for alleged improperly classified restaurant managers as exempt from overtime with attorneys' fees of $3.125 million (25 percent)); *Mousai v. E-Loan, Inc.*, N.D. Cal. No. 3:06-cv-01993-SI (January 12, 2007)

DEFENDANT'S NOTICE OF REMOVAL      15

57.     Furthermore, in affirmatively ruling that attorney's fees "may be included in the amount in controversy," see *Galt G/S*, 142 F.3d at 1155, the Ninth Circuit "must have anticipated that district courts would project fees beyond removal." *Simmons*, 209 F. Supp. 2d at 1034-35. Just as the "court determines the amount in controversy based on the damages that can reasonably be anticipated at the time of removal," it also must "measure . . . fees . . . that can reasonably be anticipated at the time of removal, not merely those already incurred." *Id.*; *see also Cagle*, 2014 WL 651923, at *10-11 (holding that an estimate of the amount of attorney hours through trial was a reasonable estimate for purposes of determining amount in controversy); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) (holding that for determining amount in controversy, attorneys' fees should be assessed through trial, and finding amount in controversy met in part by reasonable estimate of fees). Therefore, the Court may consider a 25 percent attorney's fees award for the purposes of calculating the amount in controversy.

## VII.  SUMMARY OF AMOUNT IN CONTROVERSY[5]

58.     Based on Plaintiff's allegations, the amount in controversy for just unpaid overtime, unpaid minimum wages, meal and rest break premiums, waiting time penalties, and wage statement penalties is **$5,320,830.10**. This subtotal far exceeds $5,000,000 absent any inclusion of attorneys' fees. However, taking into account attorneys' fees at the benchmark percentage of 25 percent further increases the amount in controversy by **$1,330,207.53** for a total amount in controversy of **$6,651,037.63.**

59.     Removal of this action is therefore proper, as the aggregate value of Plaintiff's class causes of action for unpaid minimum wages, unpaid overtime, meal and rest break premiums, waiting time penalties, wage statement penalties, and attorneys' fees are well in excess of the CAFA jurisdictional requirement of $5 million. *See* 28

---

(preliminary approval of settlement of $13.6 million for claims of unpaid overtime, and meal and rest break violations; attorneys' fees award estimated at $3.4 million (25%)).
[5] Plaintiff alleges additional claims in the Complaint, which would only add to the amount in controversy.

DEFENDANT'S NOTICE OF REMOVAL    16

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

U.S.C. § 1332(d)(2):

| Plaintiff's Alleged Claim | Amount in Controversy |
|---|---|
| Unpaid Minimum Wages | $564,557.58 |
| Liquidated Damages for Unpaid Minimum Wages | $564,557.58 |
| Unpaid Overtime | $423,347.58 |
| Meal Break Premiums | $564,557.58 |
| Rest Break Premiums | $564,557.58 |
| Waiting Time Penalties | $1,694,752.20 |
| Wage Statement Penalties | $944,500.00 |
| **TOTAL (w/o attorney's fees)** | **$5,320,830.10** |
| Attorneys' Fees | $1,330,207.53 |
| **AMOUNT IN CONTROVERSY** | **$6,651,037.63** |

60. Accordingly, although Defendant denies Plaintiff's claims as alleged in the Complaint, the jurisdictional minimum is satisfied for purposes of determining the amount in controversy, as it exceeds the $5,000,000 threshold required under CAFA. *See* 28 U.S.C. § 1332(d)(2).

**VIII. CONCLUSION**

61. For the reasons set forth above, the Complaint is removable to this Court pursuant to 28 U.S.C. § 1332(d). Pursuant to 28 U.S.C. § 1446(b), the Notice of Removal was filed within thirty (30) days of service on any defendant of a paper providing notice that a basis for removal of this action exists.

62. **WHEREFORE**, Defendant prays that this civil action be removed from the Superior Court of the State of California, County of San Bernardino, to the United States District Court for the Central District of California, and requests that this Court assume full jurisdiction over this matter as provided by law.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

DEFENDANT'S NOTICE OF REMOVAL                 17

Dated: February 3, 2022

LITTLER MENDELSON, P.C.

*/s/ James Becerra*
Rebecca Aragon
James A. Becerra

Attorneys for Defendant
CARVANA, LLC

4858-7357-5430.1 / 103092-1028

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

DEFENDANT'S NOTICE OF REMOVAL

18